## MORAL & CO. *v.* DÍEZ ET AL.

### APPEAL from the District Court of Mayagüez.

No. 432.—Decided May 10, 1910.

FICTITIOUS CONVEYANCES—ACTION FOR ANNULMENT.—J. E. M. sued J. D., obtained a judgment and subsequently attached various pieces of property belonging to J. D. J. E. M. conveyed one of said properties to A. D., a brother of J. D. These conveyances were not recorded in the registry when respondents obtained a judgment and attached the piece of property conveyed by J. E. M. to A. D. When respondents attempted to record their attachment and deed of sale, which was executed by the marshal, the first sale above-mentioned had already been recorded. Then respondents brought an action to set aside said conveyances on the ground that they were fraudulent. The court held that there was no proof of a fraudulent character of the suit, attachment and sale to J. E. M.

ID.—SUSPICIOUS CIRCUMSTANCES INDICATING FRAUD.—Although the delay in recording, and the fact that the debtor continued to be interested in the property after the sale to his brother, and other matters, were suspicious circumstances, nevertheless, they were not sufficient to establish the *mala fides* of the suit and sale to J. E. M.

ID.—JUDGMENT OF COMPETENT COURT—PRESUMPTION.—Every presumption is in favor of the legality of a judgment rendered by a competent court.

ID.—INDICATIONS OF FRAUD—NOTICE BY DEBTOR OF PENDING SUIT.—Outside of bankruptcy and insolvency proceedings, the failure of a debtor to notify his creditors of a pending suit against him is not a badge of fraud.

ID.—BAD FAITH OF VENDOR—IMPUTATION AGAINST VENDEE.—Bad faith on the part of a vendor cannot be imputed to the vendee without proof.

ID.—FRAUD—FAILURE TO STATE THE EXISTENCE OF MORTGAGE IN DEED.—A false recital in a deed in not stating the existence of a mortgage, when such mortgage is duly recorded, does not constitute fraud because the omission may be an inadvertence or arise in other ways.

ID.—ACTS OF VENDOR—DELAY IN RECORDING DEED.—In the absence of proof to the contrary, it cannot be presumed that a vendor has anything to do with delay in recording deed.

ID.—FRAUDULENT TITLE—INADEQUATE CONSIDERATION—NO CONSIDERATION.—Where a person has a title not shown to be fraudulent, he may convey for an inadequate consideration or no consideration at all.

REVIEW OF EVIDENCE.—In the case at bar the court held, after an examination of the evidence, that it did not show a grossly inadequate price.

ID.—FRAUD—CLEAR PROOF—SUSPICIOUS CIRCUMSTANCES—PRESUMPTION.—Although there are suspicious circumstances in this case, and A. D. may stand for J. D., fraud is never presumed, but must be established by clear proof.

ID.—REAL OWNER—PLAINTIFF'S ACTION.—If J. D. and not A. D. is the real owner, the appellants should have brought a proper action to have the former declared the real owner of the property.

ID.—REPUTATION OF DEBTOR—SUSPICIOUS ACTS—ABSENCE OF FRAUD ON THE PART OF PREDECESSOR.—No matter what reputation the debtor may have, nor how suspicious his actions may seem, in the absence of proof, they cannot affect with fraud persons who have taken title under him.

The facts are stated in the opinion.

*Messrs. Cuevillas & Méndez* for appellants.

*Messrs. F. L. Cornwell and Fernando Vázquez* for respondents.

MR. JUSTICE WOLF delivered the opinion of the court.

This was an action to set aside two conveyances which the appellees in this court alleged were made fraudulently. The prayer of the complaint is as follows:

"By virtue of the foregoing the plaintiff prays the court to render a judgment declaring that the alleged action, attachment and sale

from José Díez S. en C. to José E. Martínez, and the alleged sale from José Martínez to Antonio Díez are null and void, and that the same were fraudulently made, and ordering the record to be made of the deed to said property executed by the marshal of this court on February 8, 1909, before the notary public, Mariano Riera Palmer, with costs against the defendants, including therein a reasonable sum as fees of counsel for the plaintiffs.''

Neither in the complaint nor in their proof did the appellees set forth the nature of the first alleged fraudulent transfer, namely, the one by which José E. Martínez became possessed of the property which the appellees desired to have placed on record in the registry of property in their favor. However, it is conceded by them, and the proof of the appellants shows, that the marshal of the District Court of Mayagüez, on July 8, 1907, conveyed several pieces of property to José E. Martínez, and that these pieces of property were sold by the said marshal as a result of a suit begun by José E. Martínez against José Díez, *sociedad en comandita.*

These facts are likewise set up in a deed from José E. Martínez and his wife to Antonio Díez. Antonio Díez is a brother of José Díez, and the two brothers and José E. Martínez are charged with conspiracy and fraud against the rights of the appellees, Moral & Co., in this case. The pieces of property are described as follows:

''(a) A parcel of land situate in the ward of Arenas, municipal district of Las Marías, containing about 12 *cuerdas*, with coffee trees, plantains, pasture, bush and forest, and whose borders are as follows: Starting from the east at a quarry near a creek, the border line extends toward the west to an agave plant, bordering along this line on lands of the estate of José María Montes; then it follows a northern direction to reach a point in front of an *emajagua* tree, whence, going toward the west, it reaches another old *emajagua* tree, bordering along this line on lands of the estate already mentioned, then from that tree toward the north to a royal palm stump, bordering along this line on lands of Ulpiano Rivera, and then toward the east and bordering on lands of Pedro Mayoral to an *emajagua* tree on the bank of the above-mentioned creek, closing the line on lands of María and Diego González.

"(*b*) Rural property containing 84 *cuerdas,* with coffee trees, pasture and bush, wooden dwelling house, situate in the ward of Furnias No. 1, of the municipal district of Las Marías, bordering on the east and north on lands of the coffee plantation called Juanita, belonging to the Banco Español de Puerto Rico, on the south on land of the coffee plantation of Rafael Olivencia, and on the west on road No. 13 from Mayagüez to Las Marías, and on lands of Eladio Pruna; and

"(*c*) A two-story wooden house roofed with galvanized iron, with a third story at the back, measuring 8 meters and 70 centimeters in front by 9 meters and 75 centimeters deep, and there is annexed to it a shed with a bakery oven, measuring 9 meters and 60 centimeters long by 5 meters wide, situate in the town of Las Marías, bordering on the north on the street, on the east on the property of Pedro Olivencia, on the south on lands of José Guicafré, and on the west on a common lot belonging to the municipality."

José Díez was indebted to the appellees, Moral & Co.; in the sum of $630. They brought a suit against him on August 24, 1908, and at the same time issued an embargo against property lettered A. The suit went to judgment, and on February 8, 1909, the marshal executed a deed on said property to Moral & Co. for the sum of $100 and the assumption of the mortgage of $250 owing to the Bank of Porto Rico.

When the deed was offered for record after the original embargo, the registrar refused to record it because it was directed against José Díez and the property was recorded in the name of José Díez, *sociedad en comandita,* but made a cautionary notice. When the deed was finally offered for record, the registrar refused to record it because the same property then appeared in the name of Antonio Díez, the alienee of José Martínez who took from José Díez.

At the trial it was shown that José Díez had made many overtures of settlement to Moral & Co., and, among other things, had written them a letter, in which he offered to secure the debt by mortgaging a piece of property which his brother, Antonio Díez, owned. There was also proof that after the date of the transfer by the marshal to Martínez and up to

some time in 1909, José Díez continued to pay the instalments of the mortgage debt originally due from him to the Bank of Porto Rico. There was also proof that José Díez asked one of his brothers, Manuel by name, to attend to this debt, because he was in jail at the time; also a statement of the president of the bank of a letter received from José Díez while in jail. There was no proof as to the crime or the reason why José Díez was in jail. There was no proof of the nature of the suit brought by José E. Martínez against José Díez, *sociedad en comandita,* no proof of whether the judgment against such firm was obtained by default or after a contest, and no proof of the amount claimed by José E. Martínez. The proof is silent as to the relations, if any, that existed between José E. Martínez and José Díez. There is, on the other hand, nothing to show why the conveyance of the marshal to Martínez and the conveyance of the latter to Antonio Díez were not recorded until after the sale by the marshal to Moral & Co.

There are some indications in the record that José Díez continued to be interested in the property lettered A; but they are not inconsistent with the real ownership in good faith of Antonio Díez. In one of the letters introduced in the evidence by the appellees, their attention is drawn by José Díez to the fact that the piece of property, on which a mortgage was existing, and on which he offered to secure Moral & Co., was in the name of Antonio Díez. It may or may not be the property the subject of controversy.

From the proof before us there were absolutely no facts which would enable the court to declare that the conveyance from the marshal to José E. Martínez was fraudulent or in fraud of creditors. Every presumption is in favor of a judgment and a sale made thereunder. The appellees alleged that, permitting one creditor to obtain a judgment and not notifying other creditors, shows the fraudulent nature of the transaction. We know of no principle of law or morals, outside of insolvency or bankruptcy proceedings, that requires a

debtor to notify other creditors of his being sued or of judg-ment obtained against him.   But even supposing that it was a badge of fraud for the debtor to act in this way, we do not see how that fault could be imputed to José E. Martínez, about whose relations with the brothers Díez the record is entirely silent.   We have to assume, therefore, that the conveyance to him was a *bona fide* one.   This being so, he had a right to convey the property to anybody that he chose.

Appellees alleged that the deed from Martínez to Anto-nio Díez contained a false recital, in that it declares that the property was free from encumbrance, while in fact the mort-gage was owing to the bank.   This may have been an inad-vertence, or may have arisen in many different ways.   In any event, the registry showing that fact and everybody being presumed to be cognizant of it, we cannot see any badge of fraud in the failure to recite the existence of the mort-gage.   When Martínez conveyed the property to Antonio Díez within six days after he received his deed, it is possible this may have ended his connection with the transaction.   It is to be noted, in passing, that the complainant asked that this conveyance be set aside entirely, although other properties were conveyed thereby, and the value of these properties given in the deed from Martínez to Antonio Díez in the sum of $1,300; in other words, in order to accomplish the record-ing of the sale to them by the marshal the appellees have asked that the conveyance of property with which they have no con-nection should also be set aside.

It cannot be assumed without proof that Martínez had anything to do with the delay of Antonio Díez in recording his deed, as the presumption is that he received his money and was entirely satisfied.   The registry is mainly for the benefit of third persons, innocent purchasers and creditors, and after José Martínez had conveyed the property to An-tonio Díez, it is easily possible that the recording of the deed was a matter of indifference to him and only of moment to Antonio Díez.   Martínez, once owning the property, could con-

vey a perfectly good title to it, and if he sold for less than it was worth or even gave it away, as he had a good title, he could have transferred the same to any one else.

Appellees also maintain that the value of the property in the deed from Martínez to Antonio Díez was given at $200 only. One of their witnesses said the property was worth $1,200 as the result of improvements. We do not know when these improvements were made. But it is also a fact that the property was subject to a mortgage, and that the sale was not offered at a grossly inadequate price is evidenced by the fact that the appellees received the same property at a marshal's sale for the sum of $100 and the assumption of the mortgage of $250.

There are some suspicious circumstances about the case. It is possible that Antonio Díez is a mere stalking-horse for José Díez; but fraud is never presumed and must be established by clear proof. (*Carrero et al.* v. *Calzada et al.* [15 P. R. Rep., 340], decided June 2, 1909; *Lamas et al.* v. *Manuel Roig* [15 P. R. Rep., 482], decided June 24, 1909; Wigmore on Evidence, par. 2498; Moore on Facts, sections 51, 52 and 53.)

In the case of *Carrero* v. *Calzada*, this court said:

"It requires something more than mere suspicion to establish fraud in a conveyance of land made by a public document. Fraud must be proven by evidence which is clear, strong and convincing, for all presumptions are against it."

Even if the real owner of the property is José Díez and not Antonio Díez (which fact was not established by sufficient proof), nevertheless, the complainants mistook their cause of action and should merely have prayed that José, instead of Antonio, be declared the owner of the property, and that, therefore, the record of the sale of the marshal to the said appellees be recorded. In the case at bar the transactions of which the appellees complain took place over a year before the appellees began their action and obtained their embargo. We agree with the appellees that a lack of considera-

tion may always be inquired into where fraud is alleged, but such lack of consideration must be proved. We cannot assume it. Without more proof than exists in this case, no matter what manner of man José Díez is, we cannot declare that Martínez had been guilty of a fraud, or that Antonio Díez is not the rightful owner of the property which appears recorded in his name. There is nothing to show that he was not a man of property, and nothing to show that he might not have desired to prevent the sacrifice at a dull market of a property which had once belonged to his brother; and that there may have been a dull market at Mayagüez is, moreover, evidenced by the fact that the property lettered A was twice offered at public sale and did not bring its alleged actual value.

We are, therefore, of the opinion that the averments of the complaint as to fraud have not been proved. Judgment must be reversed.

*Reversed.*

Chief Justice Hernández and Justices MacLeary and del Toro concurred.

Mr. Justice Figueras did not take part in the decision of this case.